NioholsoN, C. J.,
delivered the opinion of the Court.
On the 24th of November, 1866, Nathan Green-wald conveyed the lands in controversy to Simon Greenwald, and executed deeds, which were registered on the — day of ---, 1866.
On the 6th of April, 1868, the same lands were sold, under a decree of the Chancery Court, in the case of Bond v. Greenwald,[1] at which sale, A. "W. Roberts was the purchaser, at the sum of $2,580, which was paid in cash. The sale was confirmed *498 at the September Term, 1868, and the title divested out of Bond and Greenwald, and vested in Roberts.
The bill, in the case of Bond v. Greenwald, was filed on the 9th of August, 1866, attachment and injunction writs issued — the former was levied on the lands immediately — the latter was returned not found, the said Greenwald being a non-resident. Publication as to him was regularly made. On the 20th of October, 1866, Greenwald filed his answer to the attachment and injunction bill.
On the 20th of January, 1870, Simon Green-wald tendered to A. ~W. Roberts the amount of his bid for the land and interest, and claimed the right to redeem. The money was refused by Roberts, and Simon Greenwald was not allowed to redeem.
Thereupon, Simon Greenwald filed his bill against A. W. Roberts, alleging, besides most of the foregoing facts, that he paid a valuable . consideration for the land, as recited in his deed from Nathan Greenwald, and that as the Chancery sale of the land was for cash, he was. entitled to redeem, as the assignee of 'the equity of redemption, by virtue of his deeds from Nathan Greenwald. He brings into court the amount tendered to Roberts, less the estimated value of - the rents, from the time he went into possession. He recognized the title of Roberts, acquired by his purchase at the Chancery sale, as superior to his own, acquired by his purchase from Nathan Greenwald. But he fails to state that he purchased after Bond filed his bill, and attached the land, and' after the injunction issued forbidding *499 Nathan Greenwald to sell or dispose of tbe land.’ Nor does he deny that he had notice when he purchased, that Nathan Greenwald was enjoined from selling.
These facts are brought forward by Roberts, in his answer, in which he charged that Nathan Greenwald and Simon Greenwald traded with notice of the injunction — that the conveyance from Nathan to Simon Greenwald was without consideration and fraudulent: and that Nathan Greenwald, at the time of the conveyance, was largely indebted, and soon afterwards failed, and became bankrupt. The answer, containing these allegations, was filed as a cross bill, but the same was demurred to, on the ground that Roberts occupied, the shoes of Nathan Greenwald, and, therefore, that he could not attack the conveyance from Nathan to Simon Greenwald. The' demurrer was sustained, and the cross-bill dismissed.
Proof was taken to sustain the charges of fraud as between the Greenwalds, which, upon the hearing, was excluded by the Chancellor as incompetent and irrelevant.
The Chancellor decreed that Simon Greenwald was entitled to redeem, and to an account for rents.
By reference to the decree of sale, in the case of Bond v. Greenwald, it appears that the complainant in that suit waived his right to have the land sold on terms which, by the statute, would give to the purchaser an absolute title.
The sale was ordered to be for cash, and, of *500 course, tbe purchaser, Koberts, took the title subject to the right of redemption in the debtor or his bona fide creditors for two years. Within this time Simon Greenwald tendered to Koberts the amount of his bid and interest, and claimed to be entitled to the right of redemption.
The evidence of his right to redeem was an absolute deed for the property, executed by Nathan Greenwald, on the-1 24th of November, 1866. By this conveyance, Nathan Greenwald divested himself of all interest in the land, and vested the same in Simon Greenwald. As the right of 'redemption is an assignable -interest, it passed to Simon Green-wald by the conveyance.
But it is said that the conveyance to Simon Greenwald was made during the pendency oí the suit between Bond ánd Nathan Greenwald, in which the land in controversy was the subject of litigation, and, hence, that Simon Greenwald took the title subject to the claim of Bond. This is conceded by complainant, by the fact that he only claims the equity of redemption.
It is next said that Nathan Greenwald was under an injunctiqn against selling and conveying the land, at the time of his conveyance to complainant, and, therefore, that the conveyance was void. The injunction was intended for the protection and security of Bond, by preventing a conveyance of the land so as to endanger or defeat his claim. The pendency of the suit, and the injunction which operated personally on Nathan *501 Greenwald, would bave the legal effect of making any conveyance by Mm inoperative, so far as Pond’s interest was concerned. But as between Nathan Greenwald and a purchaser from him, the conveyance would not be affected. As Bond was in nowise interfered with by the conveyance of Nathan Greenwald to complainant, and as complainant recognizes the interest obtained by Roberts as the purchaser under Bond’s decree, Roberts has no right to controvert the claim to the right of redemption, either by Nathan Greenwald or complainant. He has the legal title of Nathan Green-wald, by virtue of the decree confirming his purchase, but he holds it subject to the right of redemption in Nathan Greenwald or- his assignee. He has all that he purchased, but he cannot dispute the right of Nathan Greenwald or his assignee to redeem.
It is next said that the conveyance from Nathan Greenwald to complainant was fraudulent, and, therefore, that complainant has no right to redeem. As against Nathan Greenwald’s creditors, the conveyance may have been fraudulent and void, but, as between themselves, it would still be binding.
The Chancellor sustained the- demurrer to the cross-bill, and rejected the evidence tending to show fraud between Nathan Greenwald and complainant.
It follows, that the only questions which defendant can properly raise, are, first, whether complainant is the owner of the equity of redemption, by assignment from s,the debtor, Nathan Greenwald. *502 Tbis is conclusively answered by tbe deeds of conveyance. Second, whether complainant tendered the proper amount of money, the right kind of money, and in due time. The proof is, that the amount tendered was the sum bid, and interest to the date of tender. That was all the law required as to the amount. The proof is, that the money was tendered in United States Treasury notes. Whether this was the right kind of money in which to make a legal tender, is not material to decide, as we are satisfied from the proof that defendant did not refuse the tender, because of his objection to the kind of money. In this respect, therefore, the tender was sufficient. It is not disputed, but that the tender was made in due time.
The result is, that we find no error in the decree of the Chancellor, and the same is affirmed with costs.

 ÜNatlian Greenwald.